## Barr Incorporated *vs.* Town of Holliston.

Middlesex. January 4, 2012. - May 3, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Public Works,* Bidding procedure. *Contract,* Public works, Construction contract, Bidding for contract.

In a civil action seeking a judgment declaring that a town's investigation of a bidder on a public construction contract fell outside the scope of what the town was permitted to do pursuant to State law, the judge properly granted summary judgment in favor of the town, where the competitive bidding statute places no restriction on an awarding authority, when determining whether a particular bidder is "responsible" within the meaning of the statute, to look only at materials compiled as part of the Department of Capital Asset Management's contractor certification process. [114-119]

Civil action commenced in the Superior Court Department on April 16, 2008.

The case was heard by *Christopher J. Muse,* J., on a motion for summary judgment, and was reported by him to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael P. Sams* for the plaintiff.

*David J. Doneski* for the defendant.

*James L. Rudolph & Robert E. Curtis, Jr.,* for Associated Builders and Contractors, Inc., amicus curiae, submitted a brief.

*Martha Coakley,* Attorney General, *& Karla E. Zarbo,* Assistant Attorney General, for the Attorney General & another, amici curiae, submitted a brief.

Lenk, J. Contracts for the construction of public buildings estimated to cost above $100,000 "shall be awarded to the lowest responsible and eligible general bidder." G. L. c. 149, § 44A (2) (D). The question before us is whether, when an awarding authority is making a determination as to bidder re-

sponsibility, it is constrained to look only at materials compiled as part of the Department of Capital Asset Management's (DCAM's) contractor certification process. See G. L. c. 149, § 44D. We conclude that the competitive bidding statute places no such restriction on awarding authorities.[1]

1. *Background.* We recite briefly the background facts, which are not contested in any relevant respect. In February, 2008, the town of Holliston (town) solicited bids for the construction of a new police station. The plaintiff, Barr Incorporated (Barr), submitted the lowest bid. The town, however, subsequently determined that the plaintiff was not a "responsible and eligible general bidder," G. L. c. 149, § 44A (2) (D), and that the contract should instead be awarded to the next-lowest bidder, Statewide Engineering & Construction Co., Inc. (Statewide).[2]

In determining that Barr was not a responsible bidder,[3] the town first looked to information in DCAM's certification file on Barr,[4] and also conducted an Internet search. Finding that these materials raised cause for concern as to Barr's performance on past projects, the town administrator asked Charles Todd, a detective in the town's police department, to conduct a more thorough investigation into Barr's projects.

Todd proceeded by contacting eight municipalities that had previously retained the plaintiff as a contractor. He determined that six of them had an "overall negative" impression of Barr's work. Compiling Todd's report with information in DCAM's file, the town administrator concluded that, of the eighteen public projects awarded to Barr on which the town had information, seven had resulted in "negative experiences" for the project client. This conclusion was reported to the town committee

---

[1]We acknowledge the amicus brief of the Attorney General and the Inspector General on behalf of the town of Holliston (town), as well as that of Associated Builders and Contractors, Inc., on behalf of Barr Incorporated (Barr).

[2]The project is estimated to cost approximately $4.9 million. The project is therefore exempt from the mandatory bidder prequalification procedure provided by G. L. c. 149, § 44D½, for projects whose costs are expected to exceed $10 million. See *Fordyce* v. *Hanover*, 457 Mass. 248, 261 (2010).

[3]The town does not dispute that Barr is an "eligible" bidder. See note 7, *infra.*

[4]The Department of Capital Asset Management (DCAM) maintains a file of evaluations submitted on each certified contractor. G. L. c. 149, § 44D (7).

charged with overseeing the project; in April, 2008, that committee voted to find that Barr was not a responsible bidder for purposes of G. L. c. 149, § 44D.

The day before the town was to award the project, Barr filed a complaint in Superior Court against the town, seeking injunctive and declaratory relief. In its complaint, Barr alleged generally that the town's investigation fell "outside the scope of what it was permitted to do pursuant to" State law. Barr alleged also that the town "acted arbitrarily and capriciously" in determining that Barr was not a responsible bidder.

Barr subsequently moved for summary judgment on its claim for declaratory relief. In denying Barr's motion, the judge noted that his decision turned solely on the narrow, and potentially dispositive, legal issue whether, in determining that Barr was not a responsible bidder, the town was constrained to consider only DCAM's file on Barr and a statutorily mandated "update statement" to that file. See G. L. c. 149, § 44D (1) (*a*). Because the judge concluded that the statute did not constrain the town in this manner, he determined that Barr was not entitled to summary judgment in its favor. The judge specifically declined to address "whether [the town's] investigation was fair and thorough," or the ultimate issue "whether [the town's] refusal to honor Barr's low bid was arbitrary." He then allowed the parties' joint motion, pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), that the case be reported to the Appeals Court. We transferred the case on our own motion.

2. *Discussion.* A report by a judge in the Superior Court brings before us only the propriety of the ruling or order reported. G. L. c. 231, § 111. See *Barnes* v. *Metropolitan Hous. Assistance Program*, 425 Mass. 79, 84 (1997). In this case, the order at issue resolved a pure question of law: whether G. L. c. 149, § 44D, prevents an "awarding authority"[5] from conducting any independent investigation into bidder responsibility. We therefore accord "no deference to the judge's decision." *Sylvester* v. *Commissioner of Revenue*, 445 Mass. 304, 308 (2005). Nevertheless, we conclude, as did the judge, that an awarding authority may

---

[5]The term "[a]warding [a]uthority" refers generally to the State or municipal entity undertaking the building project. See 810 Code Mass. Regs. § 8.01 (2005).

consider information bearing on a bidder's responsibility — or lack thereof — outside that contained in DCAM's records on the bidder.[6]

Spurred by concerns "in the press and elsewhere about corruption in the award and supervision of [public] construction contracts," *Ward* v. *Peabody*, 380 Mass. 805, 806 (1980), in 1980 the Legislature enacted a wholesale reform of the Commonwealth's public bidding statutes, St. 1980, c. 579, § 55, now codified at G. L. c. 149, §§ 44A, 44B-44D, 44E, 44F-44H (1980 statute). Even prior to the 1980 statute, with certain exceptions, contracts for the construction of public buildings were required to "be awarded to the lowest responsible and eligible bidder." *Fordyce* v. *Hanover*, 457 Mass. 248, 259 & n. 13 (2010), comparing G. L. c. 149, § 44A, as amended through St. 1977, c. 968, with G. L. c. 149, § 44A, as appearing in St. 1980, c. 579, § 55. The 1980 statute retained this requirement, but provided additional guidance on the meaning of "[r]esponsible" and "[e]ligible." G. L. c. 149, § 44A (1). See *Fordyce* v. *Hanover*, *supra* at 259-260.

To be "[r]esponsible" as defined in G. L. c. 149, § 44A, a bidder must "demonstrably possess[] the skill, ability and integrity necessary to faithfully perform the work called for by a particular contract, based upon a determination of competent workmanship and financial soundness in accordance with the provisions of [G. L. c. 149, § 44D]."[7] That section, in turn, requires that bidders obtain a certificate of eligibility from DCAM, which it grants based on assessments of the bidder's performance on past and current projects. G. L. c. 149, § 44D (1) (*a*). Although the department will review assessments submitted by a contractor's prior private clients, see 810 Code Mass. Regs. § 4.06 (2005), private firms, unlike public entities, are under no obliga-

---

[6]While this issue has not been addressed by a Massachusetts appellate court, we note that the United States Court of Appeals for the First Circuit reached the same conclusion in another case involving Barr. See Barr, Inc. *vs.* Northborough, U.S. Ct. App., No. 07-2058 (1st Cir. Sept. 28, 2007).

[7]An "[e]ligible" bidder is one "able to meet all requirements for bidders or offerors set forth in [G. L. c. 149, §§ 44A-44H,] and not debarred from bidding under [G. L. c. 149, § 44C,] or any other applicable law, and who shall certify that he is able to furnish labor that can work in harmony with all other elements of labor employed or to be employed on the work." G. L. c. 149, § 44A.

tion to report a contractor's performance to DCAM. See G. L. c. 149, § 44D (16). General Laws c. 149, § 44D (1) (*a*), requires also that bidders submit "update statement[s]" with their bids; these are self-prepared documents listing the public projects that bidders have completed since obtaining their certificate of eligibility. See 810 Code Mass. Regs. §§ 4.01, 4.04(6), 8.06 (2005).

We have described at length the threefold function of these statutory requirements. See generally *Brasi Dev. Corp.* v. *Attorney Gen.*, 456 Mass. 684, 689-691 (2010), and cases cited. First, they assure a minimum level of contractor competence, one safeguarded by DCAM through its certification process. *Id.* at 690. Second, they establish DCAM as a clearinghouse of information between and "among individual awarding authorities." 8 Final Report to the General Court of the Special Commission Concerning State and County Buildings 351 (Dec. 31, 1980) (Ward Commission Report). Third, they provide awarding authorities with "guidelines issued by an expert authority" — that is, DCAM — on how to determine whether a bidder can successfully complete a construction contract in a timely manner. See *Fordyce* v. *Hanover, supra* at 260. Prior to these reforms, many awarding authorities would deem almost all bidders responsible and eligible, "regardless of their competency or experience, and the selection of a contractor was based solely on price." *Id.* After enactment of the 1980 statute, however, awarding authorities were able to avail themselves "of an effective system for screening out those contractors who are unqualified." 8 Ward Commission Report, *supra* at 343.

Yet, even under the 1980 statute, the entity responsible for making a final determination of bidder responsibility remains the awarding authority, not DCAM. This principle was well established under the public bidding statute that existed prior to 1980. See *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham*, 330 Mass. 494, 495-496 (1953). And, under G. L. c. 149, § 44D (6), it remains the awarding authority that must "determin[e] who is the lowest responsible and eligible bidder." Were this language not plain enough, the legislative history of the 1980 statute discloses that "the assumption" behind the legislation was that "awarding authorities will normally be in the best

position to evaluate the qualifications of those desiring to bid on its projects." 8 Ward Commission Report, *supra* at 348.

Certainly, an awarding authority's discretion in determining whether a bidder is responsible and eligible is not unconstrained. The awarding authority may only contract with a bidder certified by DCAM. See G. L. c. 149, § 44D. Even in selecting among certified bidders, G. L. c. 149, § 44D (6), requires that awarding authorities "shall consider the information submitted by the bidder in the update statement." DCAM regulations require further that awarding authorities "must review the [c]ontractor's certification file from DCAM." 810 Code Mass. Regs. § 8.04(2) (2005).

However, nothing in either the statute or DCAM's regulations expressly precludes the awarding authority from conducting an independent investigation into the past performance of potential bidders. Moreover, the statutory requirement that awarding authorities in fact read and consider information related to a bidder's performance in at least some past projects does not support the inference Barr suggests, that the Legislature wished to prevent awarding authorities from considering the bidder's performance in a wider sample of such projects, as the town did here. Nor does permitting awarding authorities to conduct independent background investigations compromise the principle that "all general contractors and subbidders [be placed] on an equal footing in the competition to gain the contract." *John T. Callahan & Sons* v. *Malden*, 430 Mass. 124, 128 (1999), quoting *Interstate Eng'g Corp.* v. *Fitchburg*, 367 Mass. 751, 757-758 (1975).

The statutory requirement that contracts be awarded to the lowest qualified bidder is intended to "facilitate[] the elimination of favoritism and corruption as factors in the awarding of public contracts." *Id.* at 758. Barr emphasizes that, in the present case, the town administrator agreed that the town's investigation of Barr was "more extensive" than its investigation of Statewide, the next lowest bidder. The town administrator explained that he devoted greater attention to Barr because his initial inquiries revealed particular cause for concern with respect to Barr's performance. Barr, however, contends that the town's conduct demonstrates that if awarding authorities are permitted to

investigate the background of contractors independently, they will perform only cursory reviews of preferred bidders while searching for flaws in disfavored firms.

We are persuaded that any such risk is adequately addressed by other aspects of the statute.[8] General Laws c. 149, § 44D (6), requires an awarding authority to notify DCAM in the event that it "determines that the low bidder is not responsible and eligible." Should DCAM conclude that the prevailing bidder obtained its contract by fraud, collusion, corruption, or other impropriety, it may begin proceedings to decertify the offending contractor. G. L. c. 149, § 44D (15). Further, disappointed bidders may file complaints with the Attorney General, who is "charged with investigating allegations of violations of the competitive bidding statute and enforcing its provisions." *Brasi Dev. Corp.* v. *Attorney Gen., supra* at 691.

Bidders may also challenge contract awards by filing a complaint in the Superior Court. Where an awarding authority rejects a bidder "for lack of competence," that decision should be "justified on the record" compiled by the authority. *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm.,* 345 Mass. 267, 274 (1962). Where an awarding authority decides to supplement the record before it as to one bidder but not as to another, that decision should also be justifiable on the record, as should an awarding authority's decision to deny a bidder any opportunity to respond to the results of an independent investigation. Cf. *Siemens Bldg. Techs., Inc.* v. *Division of Capital Asset Mgt.,* 439 Mass. 759, 765 (2003) (recognizing that conduct of awarding authority may be challenged as "illegal or arbitrary"); *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham, supra* at 496. Indeed, Barr raised just such a claim in the pending Superior Court proceedings, maintaining that the town acted "arbitrarily and capriciously" in determining that Barr was not a responsible bidder.[9]

---

[8]The office of the Inspector General is statutorily empowered to "act to prevent and detect fraud" in public contracts and to "recommend policies" in support of this mission. G. L. c. 12A, §§ 7, 8. We note that he and the Attorney General, as amici, support the town's interpretation of the statute.

[9]In deciding as we do the narrow legal issue now before us, we take no view as to whether the town's investigation was appropriately conducted, a matter that has yet to be adjudicated in the Superior Court.

We note also that the potential class of plaintiffs in such an action is not necessarily limited to the low bidder on each contract; we have specifically interpreted standing requirements under the public bidding statute in a liberal manner in order to safeguard "the important role played by individual bidders in securing compliance with the bidding statutes." *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 836 (1984).

In light of these overlapping protections against the arbitrary or fraudulent award of public building contracts, we are not convinced that the "equal playing field" established by G. L. c. 149, §§ 44A-44H, would be compromised by allowing awarding authorities to conduct their own investigations of bidder responsibility. In any event, as noted above, the statute contains no language effecting a blanket ban on such investigations.

We are mindful also, as the Inspector General and the Attorney General point out, that the information garnered from an awarding authority's independent investigation of a bidder may at times be of equal or greater recency and relevance than the information in DCAM's certification file and the bidder's update statement. DCAM's certification file need include only a "representative sample" of a contractor's public sector projects, and will not necessarily reflect performance in any of the contractor's private sector work. 810 Code Mass. Regs. § 4.06(2). Accordingly, DCAM's certification file may exclude a significant portion of the work history of contractors with extensive experience, or with experience primarily in private sector construction projects. Awarding authorities should not be precluded from assembling a more complete picture of a contractor's qualifications than that available from the certification file and update statement alone.

In sum, we cannot conclude that the town exceeded its statutory authority by conducting an investigation into Barr's performance in past projects.

*Judgment affirmed.*