SANDRA CLARK vs. BOARD OF REGISTRATION OF SOCIAL WORKERS. January 2, 2013. *Supreme Judicial Court,* Superintendence of inferior courts. *Board of Registration of Social Workers. Social Worker. License. Administrative Law,* Decision, Substantial evidence, Proceedings before agency.

Sandra Clark appeals from a memorandum and order of a single justice of this court affirming an order of the Board of Registration of Social Workers (board) suspending for five years her license to practice as a licensed independent clinical social worker (LICSW). We affirm.

*Procedural history.* On December 24, 2009, the board issued an order to Clark to show cause why her LICSW license should not be suspended, revoked, or otherwise acted against pursuant to G. L. c. 112, § 61, and the governing board regulations. The order alleged a variety of professional misconduct in violation of the statute and regulations. After a hearing, an administrative hearing officer for the board issued a tentative decision concluding that Clark had attempted to engage in an improper or dual relationship with a client; that she attempted to engage in an improper or dual relationship with a client that a prudent social worker would conclude was likely to result in exploitation of or harm to a client; that she performed a professional function while impaired due to mental illness; that she disclosed confidential client information; that her conduct constituted unprofessional conduct and undermined the public confidence in the social work profession; and that her conduct warranted discipline. The board adopted the decision and ordered Clark's license suspended for five years. The board also ordered that after three years Clark may petition for a stay of the remainder of the suspension on demonstrating her fitness to practice. Clark appealed pursuant to G. L. c. 112, § 64, and a single justice of this court affirmed the board's decision.

*Relevant factual background.* The board's findings of fact include the following. The board issued Clark an LICSW license in December, 1989. In addition to working with private clients, Clark also provided services for an employee assistance program (EAP) through which an employer could seek an assessment of an employee if the employer had a concern about the employee's mental health. In October and November, 2008, Clark had six meetings with Justin Morgan,[1] whose employer wanted an assessment as to whether he had an anger management problem. After three or four meetings, Clark determined that Morgan did not have such a problem. At the remainder of their meetings, Clark and Morgan "talk[ed] about life." Clark provided an assessment to, and was paid by, the employer's EAP.

Clark subsequently began to feel unwell. In December, 2008, she became increasingly exhausted, and experienced intestinal issues, sleeplessness, and weight loss. In January, 2009, her problems became more severe and included delusions and dissociation. She was admitted to a hospital on January 20, 2009, and on January 21, she was hospitalized at a private psychiatric facility, where she remained for approximately one week. On her release, her treatment plan included checking in with a psychiatrist and taking a medication used to treat severe anxiety, posttraumatic stress disorder, bipolar disorder, and depression.

Beginning in December, 2008, and continuing after her hospitalization and into February, 2009, Clark repeatedly contacted Morgan by letter and telephone.

---

[1] A pseudonym.

Prior to her hospitalization she left numerous telephone messages for him, at least some of which indicated that she was suffering from delusions. Clark also had other individuals call Morgan on her behalf. After her hospitalization, she continued to contact Morgan, referring to plans that did not exist; sending him a package for Valentine's Day; and sending him letters from Peru, in February, 2009, while she was traveling.

In addition to her contact with Morgan, Clark also had professional contact with some of her other clients during this time frame. Although she did sometimes cancel appointments if she determined that she was not well enough, she did not cancel all of them or altogether stop seeing clients. Indeed, two days after her release from the psychiatric facility, Clark saw at least one client and, in the following week, spoke to three or four clients by telephone.

In April, 2009, Clark opened an office in the city where Morgan worked, approximately one hundred yards from Morgan's office. Morgan became alarmed on learning of Clark's new office and contacted the police. The police, in turn, contacted the board.[2]

*Discussion.* "Under G. L. c. 112, § 64, a person whose license to practice medicine has been revoked may petition the court to 'enter a decree revising or reversing the decision . . . in accordance with the standards for review provided' in G. L. c. 30A, § 14 (7). *Fisch* v. *Board of Registration in Med.*, 437 Mass. 128, 131 (2002). The court may modify or set aside the . . . final decision only if the petitioner demonstrates that the decision was legally erroneous, procedurally defective, unsupported by substantial evidence, arbitrary or capricious, or contained one or more of three other enumerated defects not at issue here. *Id.*" *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 685 (2005).

a. Clark first argues that she did not provide "social work services" to Morgan because she did not "treat" him; that Morgan thus was not a "client"; and that she therefore could not have violated any law or regulation governing the social worker-client relationship. Even if Clark is correct that she did not provide "treatment" to Morgan — rather, she determined that he did not have a mental health problem — her argument that she did not provide social work services is untenable.

As a part of this argument, Clark suggests that there is a conflict between G. L. c. 112, § 130, and 258 Code Mass. Regs. § 8.04 (2006), both of which are relevant to what it means to practice social work. Pursuant to G. L. c. 112, § 130, the practice of social work "involve[s] the application of social work theory and methods in the prevention, treatment, *or* resolution of mental and emotional disorders" (emphasis added). Pursuant to 258 Code Mass. Regs. § 8.04, the provision of social work services involves "the application of social work theory and specialized clinical knowledge and methods to assess, diagnose, prevent *and* treat mental, emotional or behavioral disorders, conditions or addictions" (emphasis added).

In Clark's view, a conflict exists between the regulation and the statute

---

[2]In addition to these incidents, Clark suffered from "some sort of mental impairment" in the past and, in June, 1996, entered into a consent agreement with the State of Maine's Board of Social Work Licensure in which she admitted that she had been under severe stress that had led to depression and a serious dissociative episode for which she had been hospitalized.

because under the statute, a social worker who has done any one of the activities listed — prevented, treated, *or* resolved a mental disorder — has provided social work services, but under the regulation, a social worker has only provided social work services if she has done all of the activities listed — assess, diagnose, prevent *and* treat a mental health disorder. She argues that the board improperly relied on the statutory definition, which would not require her to "treat" Morgan, and ignored the definition in the regulation.

Although the regulation uses the conjunction "and," Clark points to no law that supports her argument that a social worker only provides social work services if she does all of the things listed in the regulation. It is unreasonable to interpret the regulation to mean that a social worker who meets with an individual and determines that the individual does not have a mental disorder has not provided social work services. The assessment and diagnosis (that the individual does not have a mental disorder) themselves involve the provision of social work services. The only sensible reading of the regulation, as the board suggests, is that it simply provides the range of services that a social worker might provide. Clark clearly provided "social work services" to Morgan — she was hired through the employer's EAP to do just that — and any argument that the board's findings are erroneous because they stem from that premise is incorrect.

b. Clark also contends that the board's decision was not supported by substantial evidence or was based on an error of law. There was no error. Substantial evidence supported the board's determination that Clark violated 258 Code Mass. Regs. § 20.07 (2003), which provides that "[a] social worker shall not . . . attempt to engage in[] any social relationship with a client . . . if a reasonably prudent social worker . . . would conclude that that relationship is likely to result in exploitation of, or identifiable physical or emotional harm to, that . . . client." There was unrefuted evidence that Clark contacted Morgan numerous times after their sessions ended. There was no evidence of any professional need or basis for her doing so. There was also evidence, which the board credited, that Clark's actions clearly caused Morgan, who eventually contacted the police, distress.[3]

Similarly, there was no error in the board's determination that Clark practiced social work while impaired, which is prohibited by 258 Code Mass. Regs. § 20.05 (2003). Clark's own testimony, as well as that of the board's expert witness, indicated that Clark was suffering from mental health problems beginning in December, 2008; that she continued to suffer from some problems even after her hospitalization in January, 2009; and that during that time she had appointments, and spoke on the telephone, with at least some of her clients.

c. Clark also raises a procedural issue related to the board's proceedings. The tentative decision, issued by the hearing officer and subsequently adopted by the board, did not recommend a particular sanction. Only the board's final decision contained the five-year suspension. Clark argues that she was entitled to a separate hearing regarding sanctions. Nothing in the applicable law or

---

[3]Clark further argues that the board erred in relying on National Association of Social Workers standards because there was no evidence that she was a member of the association. This argument is misguided. The board's regulations clearly adopt those standards. See 258 Code Mass. Regs. § 20.01(10)(a) (2003).

regulations provides for such a hearing; nor is there any requirement that the tentative decision include a proposed sanction. Furthermore, the hearing officer clearly reminded the parties at the outset of the hearing that any appeal from the board's final decision regarding sanctions would be limited to the record from the hearing. Clark thus had an opportunity to, and in fact did, address the sanction at both the hearing and before the full board in her response to the tentative decision.

Although we conclude that there was no due process violation, we encourage the board, as did the single justice, to modify its procedures regarding the manner in which sanctions are addressed. "[H]earings need not comport with any particular form," *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 377 (1985), but perceived fairness of the board's proceedings could be enhanced by either a statement made early in the proceedings as to the specific sanction being sought, or a bifurcation of the proceedings into adjudication and sanction stages.

d. Finally, Clark argues that irregularities in the hearing process violated her constitutional right to due process. Because we have found no irregularities, we need not consider this argument.

*Conclusion.* The decision of the single justice was comprehensive and correctly rejected each of Clark's claims. Clark has not demonstrated that the board's decision to suspend her license for five years was not supported by substantial evidence, or that it was arbitrary or capricious or based on any error of law. The order of the single justice is therefore affirmed.

*So ordered.*

*Thomas J. Gleason* for the plaintiff.

*Annapurna Balakrishna*, Assistant Attorney General, for the defendant.

MARIA SERRAZINA *vs.* SPRINGFIELD PUBLIC SCHOOLS. February 15, 2013. *School and School Committee,* Arbitration, Suspension from employment, Termination of employment, Compensation of personnel. *Arbitration,* School committee, Confirmation of award. *Damages,* Back pay. *Labor,* Arbitration.

When the plaintiff, Maria Serrazina, became the subject of a certain Federal indictment, the defendant school department suspended her, without pay under G. L. c. 268A, § 25, from her position as a school adjustment counsellor. Thereafter, she entered into a pretrial diversion agreement with Federal authorities, and the indictment ultimately was dismissed. After Serrazina sought reinstatement, the school department terminated her employment pursuant to G. L. c. 71, § 42, and she filed a grievance challenging the termination. An arbitrator ordered that she be reinstated. Serrazina then commenced an action in the Superior Court seeking confirmation of the arbitration award, as well as back pay for the period of her suspension and the period between her termination and reinstatement. A Superior Court judge affirmed the arbitration award reinstating Serrazina, but allowed the school department's motion for summary judgment with respect to her back pay claims. Serrazina appealed, challenging the denial of compensation. The Appeals Court affirmed the denial with respect to the period between her termination and reinstatement, but reversed with respect to the period of her suspension. *Serrazina* v. *Springfield Pub. Schs.*, 80 Mass. App. Ct. 617 (2011). We granted Serrazina's application for further appellate review.