MELLO CONSTRUCTION, INC. *vs.* DIVISION OF CAPITAL ASSET MANAGEMENT.

No. 12-P-1429.

Bristol. June 4, 2013. - December 18, 2013.

Present: CYPHER, GRAHAM, & AGNES, JJ.

*Public Works,* General contractor. *License. Governmental Immunity. Damages. Practice, Civil,* Action in nature of certiorari.

Discussion of the statutory and regulatory scheme governing certification by the division of capital asset management and maintenance of eligibility of contractors to bid on public construction contracts. [627-629]

In a civil action brought in the Superior Court against the division of capital asset management and maintenance (division) seeking monetary damages for the division's denial of the plaintiff contractor's application for certification of eligibility to bid on public construction contracts, the judge did not err in allowing the division's motion for judgment on the pleadings, where the judge properly treated the case as an action in the nature of certiorari under G. L. c. 249, § 4, given that the Commonwealth had not waived sovereign immunity with respect to a claim arising from the denial of or refusal to issue a license or certificate, no private right of action could be inferred from the governing statute (G. L. c. 149, § 44D[4]), and no such action for money damages against the division existed at common law [629-631]; and where the plaintiff failed to establish that the denial was arbitrary or capricious, in that the division based its decision on appropriate and relevant factors specified in the governing statute and its regulations and guidelines [632-634].

CIVIL ACTION commenced in the Superior Court Department on July 25, 2007.

The case was heard by *Thomas F. McGuire, Jr.,* J., on motions for judgment on the pleadings.

*John J. McNamara* for the plaintiff.

*James A. Sweeney,* Assistant Attorney General, for the defendant.

GRAHAM, J. The dispositive question presented in this appeal is whether a general contractor may sue the division of capital

asset management and maintenance (DCAM) for money damages for a discretionary decision to deny an annual application for certification to bid on public construction projects.[1] We conclude that it may not and affirm a Superior Court judgment dismissing the contractor's complaint.

*Background.* From 1985 until 2004, Mello Construction, Inc. (Mello), a general contractor specializing in large-scale public construction projects, received annual certificates of eligibility from DCAM.[2]

In October, 2004, Mello submitted its annual application for certification. See G. L. c. 149, § 44D(2), as amended by St. 2004, c. 193, § 15. On August 19, 2005, DCAM issued a preliminary determination denying the application based in part on two negative contractor evaluations.[3] See G. L. c. 149, § 44D(4). As permitted by the statute, Mello timely requested reconsideration and submitted additional information and documentation to DCAM, including lengthy rebuttals of the allegedly biased evaluations. See *ibid.* On October 27, 2005, DCAM, refusing to disregard the negative evaluations, denied Mello's application for four reasons: (1) failure to achieve a minimum

---

[1]DCAM is the State agency within the Executive Office of Administration and Finance established to oversee public building projects and to administer the public bidding statutes. See G. L. c. 7, §§ 4A, 39B, 40A.

[2]To the extent Mello alleged in its complaint that 100 percent of its work was performed in the public sector, we note that three of the four ongoing projects Mello listed in its 2004 DCAM application appeared to be private development projects.

[3]The preliminary denial was based on two written evaluations and one telephone interview concerning three public building projects: the new Berkley Middle School, the Andover public safety building, and the Norwood police and fire station. Mello received eighty-five out of 100 points from the architect on the Berkley project, but only forty-four out of 100 points from the superintendent of the Berkley public schools. DCAM averaged these scores to a sixty-five. Mello received forty-one out of 100 points from the Andover town manager. During a telephone interview with the Norwood reference listed on Mello's application, DCAM learned that Norwood had terminated Mello from the building project for cause on September 13, 2003, a fact not disclosed on Mello's application for certification. No written evaluation from Norwood factored into DCAM's decision. So far as appears from the record, DCAM did not ask Norwood to complete a formal telephone inquiry contemplated by its guidelines. See Section III.A.3 of DCAM's contractor certification guidelines and procedures (guidelines). As of the date of the negative evaluations and the telephone interview, Mello was in litigation or arbitration with these three towns.

average project rating required for certification; (2) receipt of two failing scores on the Berkley and Andover projects (see note 3, *supra*); (3) failure to disclose on its application the termination from the Norwood project; and (4) failure to disclose the invoking of a performance bond.[4]

Following a hearing in January, 2006, the Attorney General issued a decision on April 6, 2007, affirming the denial of the application.[5] See *ibid.* In July, 2007, Mello commenced this Superior Court action against DCAM, seeking monetary damages.[6] On December 1, 2009, DCAM filed a motion to have the case proceed pursuant to a writ of certiorari under G. L. c. 249, § 4, which was allowed. The parties then filed cross motions for judgment on the pleadings. DCAM's motion for judgment on the pleadings was allowed, Mello's motion was denied, and the complaint was dismissed. Mello filed a timely notice of appeal.

*Statutory scheme.* Under the Massachusetts competitive bidding statute, every contract for the construction of public buildings estimated to cost more than $100,000 "shall be awarded to the lowest responsible and eligible general bidder." G. L. c. 149,

---

[4]In May, 2005, while Mello's application was under consideration, DCAM instituted a new contractor evaluation system. On its application, Mello listed twenty-five projects that it had completed within the previous five-year period. Mello's average project rating of fifty-four fell below the minimum score required for certification under both the old and amended regulations and guidelines (seventy and eighty respectively).

[5]The parties have failed to provide this court with a copy of the Attorney General's decision, which, as Mello points out, was issued well beyond the thirty-day statutory period. Section 44D(4) of c. 149 invites an aggrieved party to seek "remedies at law" if the Attorney General fails to render a decision within thirty days. Mello claims that it delayed seeking its remedies due to the continuing representations of the assistant attorney general involved in the case that a decision would be forthcoming.

[6]Mello's three-count complaint asserted (1) a statutory claim under "G. L. c. 149, § 44D," (2) a negligence claim against DCAM for "the arbitrary and capricious denial of" its application, and (3) a claim for declaratory relief. Before settling into a purported claim under § 44D(4), Mello did not specify under which of the seventeen subsections of § 44D it was proceeding. The negligence claim should never have been brought for the reason, if none other, of the lack of presentment. See G. L. c. 258, § 4. That claim was dismissed without any opposition from Mello. Furthermore, because Mello failed to address the propriety of the dismissal of the declaratory judgment count in its brief, we deem the matter waived. See *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 35 n.1 (2005).

§ 44A(2)(D), as amended by St. 2004, c. 193, § 11. The Legislature has charged DCAM with the duty of certifying bidder eligibility in the first instance. See *Barr Inc.* v. *Holliston*, 462 Mass. 112, 115 (2012). Without a certificate of eligibility, a contractor cannot bid on any public construction contracts. See G. L. c. 149, § 44D(1)(*a*).

Each year, a contractor must submit an application for certification to DCAM containing certain detailed information. See G. L. c. 149, § 44D(2). DCAM is required to evaluate the applicant "on the basis of the application and on relevant past performance according to procedures and criteria" mandated by statute and the regulations and guidelines prescribed by DCAM. G. L. c. 149, § 44D(3), as amended by St. 1993, c. 46, § 106. Written performance evaluations involving a numerical rating system of eight work categories play a central role in DCAM's assessment process.[7]

The contractor has the burden of establishing to DCAM's satisfaction that it is competent and responsible.[8] See 810 Code Mass. Regs. § 4.04 (2005). DCAM has wide discretion in deciding whether to issue a certificate of eligibility. See 810 Code Mass. Regs. § 4.04(1) (DCAM reserves right not to certify contractor even if contractor meets DCAM's minimum over-all numerical rating for certification).

DCAM's requirements and conditions for certification are lengthy. Some events occurring within the five-year statutory look-back period require the mandatory denial of an application for certification, while others constitute justifiable cause for denial. Discretionary grounds for denial include, as herein relevant, the following events: termination for cause from a building project, a record of two project ratings that fall below the passing score established in DCAM's contractor certification

---

[7]DCAM develops the standard contractor evaluation forms and maintains certification files for all contractors. See G. L. c. 149, § 44D(7). Every public entity undertaking a building project is required to complete an evaluation and submit it to DCAM within seventy days of the completion of the project.

[8]"Responsible" is defined as "demonstrably possessing the skill, ability and integrity necessary to faithfully perform the work called for by a particular contract, based upon a determination of competent workmanship and financial soundness in accordance with the provisions of [G. L. c. 149, § 44D]." G. L. c. 149, § 44A(1), as amended by St. 1998, c. 194, § 182.

guidelines and procedures (guidelines) on more than one building project, and a record of an invoked performance bond. See 810 Code Mass. Regs. §§ 4.04(9)(b), (i), (k). DCAM may also deny an application based on the provision of either false or misleading information or the failure to provide all required information. See 810 Code Mass. Regs. § 4.04(6).

*Discussion.* This appeal turns on the meaning of "remedies at law" that the aggrieved party may seek following the exhaustion of its administrative appeal. Mello contends that "the remedies at law" referred to in the second paragraph of G. L. c. 149, § 44D(4), is the right to bring a civil action for money damages against DCAM with a full jury trial on the merits. We disagree. First, the Commonwealth has not waived sovereign immunity with respect to any claims arising from the denial of, or refusal to issue, a license or certificate. See G. L. c. 258, § 10(*e*); *Tivnan* v. *Registrar of Motor Vehicles*, 50 Mass. App. Ct. 96, 102 (2000); *Smith* v. *Registrar of Motor Vehicles*, 66 Mass. App. Ct. 31, 32 (2006). We do not read the general language of G. L. c. 149, § 44D(4), allowing an applicant to seek "remedies at law" following the exhaustion of the statutory right of appeal to waive that immunity. See *Boston Med. Center Corp.* v. *Secretary of the Executive Office of Health & Human Servs.*, 463 Mass. 447, 454 (2012), quoting from *Ware* v. *Commonwealth*, 409 Mass. 89, 91 (1991) ("The rules of construction governing statutory waivers of sovereign immunity are stringent").

Even if immunity were waived, the legislative intent necessary to infer an implied right of private action from the statute is absent here. See *Loffredo* v. *Center for Addictive Behaviors*, 426 Mass. 541, 543 (1998). The text of G. L. c. 149, § 44D(4), cannot be construed to envision any private right of action for contractors injured by DCAM's certification decisions. Moreover, § 44D(4) provides an applicant with the remedy of an administrative appeal to the Attorney General and expressly empowers the Attorney General to institute enforcement proceedings, if warranted, against DCAM.[9] In contrast to § 44D(4), G. L. c. 149, § 44D(7), the statutory section governing contractor

---

[9]The Attorney General chose to take no action against DCAM here. As part of her enforcement duties under G. L. c. 149, § 44H, the Attorney General

evaluations, provides contractors with a private right of action against any individual who acts in a wilful, wanton, or reckless manner in the course of completing a contractor evaluation. All of these factors squarely cut against recognizing a private right of action against DCAM in § 44D(4). See *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 372-373 (2008).

We are not persuaded by Mello's argument that a cause of action for money damages against DCAM exists at common law.[10] Judicial remedies in the administrative arena are normally limited to the modification or annulment of the unlawful government action, or a remand order for reconsideration and/or further proceedings. See G. L. c. 30A, § 14(7); G. L. c. 249, § 4; *Gifford* v. *Commissioner of Pub. Health*, 328 Mass. 608, 619-620 (1952); *Turnpike Amusement Park, Inc.* v. *Licensing Commn. of Cambridge*, 343 Mass. 435, 438 (1962); *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 87, 90-91 (1968); *Longo* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 356 Mass. 24, 27-28 (1969); *Konstantopoulos* v. *Whately*, 384 Mass. 123, 128-138 (1981); *Ingalls* v. *Board of Registration in Med.*, 445 Mass. 291, 294 (2005); *Clark* v. *Board of Registration of Social Wkrs.*, 464 Mass. 1008, 1009 (2013). Further, the merits of discretionary licensing decisions are commonly subjected to only a limited review by courts under the arbitrary and capricious standard. See, e.g., *Caswell* v. *Licensing Commr. of Brockton*, 387 Mass. 864, 878 (1983); *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 300-301 (1985).

Licenses are required to engage in many occupations and businesses. The loss of a license may have devastating financial and emotional consequences. Typically, however, there is no

___

also investigates and decides bid protests. See *Brasi Dev. Corp.* v. *Attorney Gen.*, 456 Mass. 684, 691 (2010); *Fordyce* v. *Hanover*, 457 Mass. 248, 252-254 (2010).

[10]The line of cases allowing disappointed low bidders deprived of specific contracts to recover bid preparation costs and lost profits are inapposite and thus do not support a cause of action against DCAM. None involved a discretionary certification decision, and all arose under different sections of G. L. c. 149 or other competitive bidding statutes. See, e.g., *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 3 Mass. App. Ct. 326 (1975), *S.C.*, 371 Mass. 235 (1976); *Bradford & Bigelow, Inc.* v. *Commonwealth*, 24 Mass. App. Ct. 349 (1987); *E. Amanti & Sons, Inc.* v. *Barnstable*, 42 Mass. App. Ct. 773 (1997).

right to money damages flowing from an improper licensing action. During the often long period of time between the suspension or revocation of a professional license and the decision of the reviewing court, the holder of the license is generally not entitled to a temporary stay and thus may not pursue his or her livelihood. See, e.g., G. L. c. 112, § 64; *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 128-130 (1985).

We disagree with Mello's contention that G. L. c. 249, § 4, is inapplicable. Following the Attorney General's decision to take no action, see G. L. c. 149, § 44H, further judicial review of DCAM's decision was unavailable by motion or statute.[11] Where, as here, there was no other reasonably adequate remedy, the proper review mechanism for Mello was an action in the nature of certiorari "to correct errors in [quasi judicial administrative] proceedings." *Hoffer* v. *Board of Registration in Med.*, 461 Mass. 451, 456 (2012), quoting from G. L. c. 249, § 4. Since Mello improperly framed this action as one for money damages unavailable as a remedy at law, the judge was entitled to amend the complaint to conform to the pleadings and to order the matter to proceed in the proper form.[12] See Mass.R.Civ.P. 1, as amended, 450 Mass. 1403 (2008) (rules of civil procedure are to be interpreted "to secure the just, speedy, and inexpensive determination of every action.") Nothing DCAM did or failed to do in this litigation could have conferred jurisdiction on the Superior Court to hear an action for money damages where none otherwise existed. See *MacDougall* v. *Acres*, 427 Mass. 363, 371 (1998).

---

[11]The parties agree that Mello had no right to judicial review under G. L. c. 30A, the Administrative Procedure Act. Compare G. L. c. 149, § 44D(4), with G. L. c. 29, § 29F(*d*)-(*e*) (providing contractors facing suspension or debarment from bidding by DCAM with additional procedural protections, including right to adjudicatory hearing under G. L. c. 30A and judicial review of adverse decisions). It is not necessary for us to decide whether Mello had the right to file a complaint for declaratory judgment because it has waived that issue. See note 6, *supra.*

[12]In a certiorari proceeding, judicial review is confined to the record of the administrative proceedings below. See *Police Commr. of Boston* v. *Robinson*, 47 Mass. App. Ct. 767, 775 (1999). The admission of extrinsic evidence urged by Mello would be contrary to certiorari practice and precedent. See *Durbin* v. *Selectmen of Kingston*, 62 Mass. App. Ct. 1, 9 (2004). There was thus no error in the denial, pursuant to G. L. c. 30A, § 14(5)-(6), and Superior Court Standing Order 1-96, of Mello's motion to supplement the administrative record.

On the merits, we conclude, as did the judge, that Mello failed to establish that DCAM's decision to deny Mello's application was arbitrary or capricious. A decision is arbitrary and capricious if "there is no ground which 'reasonable men might deem proper' to support it." *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 128-129 (1994), quoting from *Cotter* v. *Chelsea*, 329 Mass. 314, 318 (1952).

In denying Mello's application, DCAM could only have considered contractor evaluations that were reliable. See 810 Code Mass. Regs. § 4.06(3). Mello argues that all contractor evaluations completed by litigation opponents are inherently unreliable and must be completely disregarded by DCAM.[13] Although there is surface appeal to that argument, we think that DCAM may permissibly consider any contractor evaluations possessing sufficient indicia of reliability.

We conclude that in this case, DCAM could properly have determined that the evaluations were reliable. Not only did the public officials disclose the litigation between the parties to DCAM, they also were involved in overseeing the projects and thus had direct personal knowledge of the performance issues discussed. Each certified that the information provided in the evaluation represented "a true analysis of the contractor's performance record." See *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 192 (1935) ("It is to be presumed that public officers will discharge their duties honestly and in accordance with the rules of law. Every presumption is in favor of legality and good faith until the contrary is shown").

As noted by DCAM, the negative evaluations provided detailed descriptions and examples of Mello's alleged performance problems and work deficiencies. Berkley and Andover expressed specific dissatisfaction with, inter alia, Mello's alleged mishandling of issues in the beginning of the contracts, the unreasonable pursuit of change orders, the poor management of subcontractors, and the substandard on-site superintendents. Authors who gave Mello passing scores and overall positive evaluations,

[13]Mello was no stranger to legal actions. In its 2004 application, Mello disclosed its involvement in thirty-seven pending and concluded legal and administrative actions.

such as the Berkley project architect, offered similar criticisms of Mello's performance.

Finally, DCAM had before it the documentation from both the towns and Mello in support of their respective positions, and notwithstanding the absence of any statutory or regulatory duty, DCAM met with Mello prior to its final determination in order to discuss the negative contractor evaluations.

To the extent that Mello challenges DCAM's decision not to include in its over-all numerical rating the perfect evaluation issued by the North Attleboro Housing Authority (NAHA), DCAM could have, consistent with its expertise, concluded that the contract work did not fall within the scope of general building construction as defined by its guidelines.[14] DCAM certainly was not bound by the town's characterization of the project work in its advertising.

In addition to the evaluations and over-all score, DCAM's final decision was also based on Mello's nondisclosures of relevant information. The failure to provide complete and accurate answers to all questions, standing alone, was grounds for denying Mello's application.[15] See 810 Code Mass. Regs. § 4.04(6). In sum, DCAM based its decision on appropriate and

---

[14]In 2004, Mello was certified by DCAM to perform general building construction work with a single project limit of $15,000,000 and an aggregate work limit of $36,605,000. Section VI.A.1 of the guidelines define general building construction to mean "[t]he undertaking of general contracts for the construction of buildings . . . . The contract must include a variety of construction practices and supervision of a minimum of three sub-trades." The NAHA project, which was estimated to cost $100,000, required Mello to replace and upgrade locks and locksets. We fail to see how lock work, which is also not a standard category certified by DCAM, falls within that definition.

[15]Mello's president signed the application under the pains and penalties of perjury, certifying that all answers and statements were true and correct. Asked whether the firm was terminated in the previous five years from any contract prior to completing its work, he answered no. Asked whether a performance bond had been invoked against the firm, he answered no. In fact, Norwood terminated Mello prior to completion. To the extent Mello argued to DCAM that disclosure was not required since its termination occurred after "substantial" completion, DCAM was not persuaded by Mello's gloss on the question. Mello also does not dispute that a bond had been invoked. The duty of full disclosure required Mello's president to report the termination and the invocation of the bond and, as directed by the application and guidelines, to attach a separate sheet explaining the circumstances surrounding those events. Where DCAM based its denial on admitted nondisclosures as opposed to the

relevant factors specified in the governing statute, and its regulations and guidelines.

*Judgment affirmed.*

underlying actions, the facts that Mello ultimately prevailed in arbitration and Mello's performance bond surety did not take over the project were irrelevant.