Leibensperger, Edward P., J.
The plaintiff, Middle-sex Integrative Medicine, Inc. (MIM), filed this action in the nature of certiorari under G.L.c. 249, §4 against the defendant, the Massachusetts Department of Public Health (Department), after the Department denied each of MIM’s three applications to operate Registered Marijuana Dispensaries (RMDs) in Massachusetts. MIM and the Department have each moved for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). On November 21,2016, this court held a hearing on the motions. For the reasons stated below, MIM’s motion for judgment on the pleadings is DENIED and the Department’s motion for judgment on the pleadings is ALLOWED.
BACKGROUND
In November 2012, Massachusetts voters approved a ballot initiative allowing for the medical use of marijuana for qualifying patients. Thereafter, the Legislature enacted Chapter 369 of the Acts of 2012, known as “An Act for the Humanitarian Medical Use of Marijuana” (Act). St. 2012, c. 369. The Act authorized the Department to register at least one, and up to five, RMDs in each Massachusetts county, up to a total of 35 statewide, during the first year after the law’s effective date (Januaiy 1,2013). G.L.c. 94C, App. §1-9.
Pursuant to the Act, the Department promulgated regulations (105 Code Mass.Regs. §725.001 et seq.) which established, among other things, a two-phase application process. In Phase 1, the applicant paid a non-refundable fee and submitted basic information that was reviewed by the Department. See 105 Code Mass.Regs. §725.100(B)(1). If the applicant submitted all of the required information in a timely fashion, the applicant was notified that it could proceed to Phase 2. See id. at §725.100(B)(2). In this phase, the applicant paid a non-refundable $30,000 fee and submitted an application containing much more detailed information about its proposed dispensary, after which the Department evaluated and scored the application. See id. at §725.100(B)(3)-(5).
MIM sought to operate three RMDs — one in Middle-sex Coimiy (Everett), one in Norfolk County (Norwood), and one in Worcester County (Shrewsbury). In August 2013, MIM filed a Phase 1 application for each location and, along with other applicants, MIM was invited by the Department to submit Phase 2 applications. On November 21, 2013, MIM paid the Department $90,000 and filed three Phase 2 applications. Out of apossible 163 points, MIM received scores of 118,127, and 118 on its three applications.
On Januaiy 31, 2014, the Department announced the selection of 20 applicants to receive a Provisional Certificate of Registration. On the same day, the Department notified MIM by letter that its Phase 2 applications had been denied and it was therefore not one of the selected applicants.
On March 7, 2014, MIM participated in an informational briefing with the Department to discuss the scoring of its applications and the reasons why the applications did not sufficiently satisfy the Department’s criteria for an award of a Provisional Registration Certificate. During the meeting, MIM asked to and was allowed to submit additional materials which sought to address the alleged deficiencies in its applications. Several months later, by letters dated June 27, 2014, the Department informed MIM that its “status has not changed and you have not been selected for a [dispensary] registration.”
The Department’s regulations specify that an applicant receiving a notice of non-selection may seek judicial review in the Superior Court under G.L.c. 249, §4, the certiorari statute. 105 Code Mass.Regs. §725.500(D). MIM invoked this procedure and filed this suit in August 2014. MIM maintains that the Department’s denials of its 2013 Phase 2 applications were arbitrary and capricious because: the Department improperly delegated its authority to approve or deny the Phase 2 applications to a contractor; scored its applications unfairly; and failed to consider the *94 additional materials it submitted at the March 2014 informal briefing.
In June 2015, the Department began accepting additional applications for RMDs using a new application process. Applications are now reviewed on a rolling basis as they are received. The applications are no longer scored. Instead, they are reviewed for compliance with the Act and the applicants are notified of necessary updates or clarifications.[1]
Under the revised application process, the applicant first submits an “Application of Intent” along with an application fee. After reviewing the application, the Department invites successful applicants to move on and submit the more comprehensive “Management and Operations Profile” (MOP) along with another fee. After submission of the MOP, the Department reviews the information and contacts the applicant if clarifications/updates to the submitted application materials are needed. When the Department is satisfied with what it has received, the applicant is invited by the Department to submit a Siting Profile. Once submitted, the Department reviews the information in the Siting Profile and, as with the MOP, contacts the applicant if clarifications/updates to the submitted materials are needed. After this process is complete, the Department notifies the applicant whether it has met the standards necessary to receive a Provisional Certificate of Registration.
In June 2015, as this lawsuit remained pending, MIM decided to participate in this new process and filed Applications of Intent for three dispensaries. It paid a $1,500 fee for each Application. In September 2015, the Department invited MIM to submit a MOP for all three Applications. MIM, however, only elected to submit a MOP for one proposed facility. In connection with this MOP, MIM paid an application fee of $30,000. MIM’s application remains pending. It will be expected to pay a $50,000 fee if awarded a Provisional Certificate of Registration and to pay an annual $50,000 registration fee if finally approved to operate a RMD.
DISCUSSION
In moving for judgment on the pleadings, MIM asserts that “]t]here is little point to remanding the consideration of MIM’s 2013 Applications for further review or rescoring by [the Department]” given that “[the Department] has already changed its application process” and “MIM has also moved on . . . [and] is now focused on different opportunities and locations.” PI. Brief at 26. Accordingly, MIM now seeks only monetary relief rather than reversal or remand to the Department for further proceedings.[2] Specifically, MIM seeks an order that the Department must credit the $90,000 it paid in connection with its 2013 applications towards the fees it will pay should its 2015 application continue successfully to proceed through the new application process.[3]
The relief MIM seeks is not appropriately granted because nothing in the Act or its implementing regulations allows for this type of remedy. See, e.g., Commonwealth v. Martin, 476 Mass. 72, 77 (2016) (defendant who filed successful motion to withdraw a guilty plea not entitled to return of probation supervision fees where no statutory basis for recoupment of such fees existed); Associated Indus. of Mass. Mut. Ins. Co. v. Hough, 84 Mass.App.Ct. 531, 532-36 (2013) (employee who successfully defended against action brought by insurer to recoup excess workers’ compensation benefits not entitled to attorneys fees because no provision of Chapter 152 authorized such an award). See also Chin v. Merriot, 470 Mass. 527, 537 (2015) (“We will not ‘read into the statute a provision which the Legislature did not see fit to put there’ ”). Indeed, the Department’s regulations specify that the fees paid in connection with Phases 1 and 2 are “non-refundable.” See 105 Code Mass.Regs. §725.100(B)(l)(i) and (B)(3)(a). The only remedy for a disappointed applicant under the Department’s regulations is “judicial review in Superior Court in an action for certiorari relief.” 105 Code Mass.Regs. §725.500(D). Certiorari review, however, is not intended to serve as a vehicle for recovering monetaiy damages.
“It is the function of a writ of certiorari... to correct substantive errors of law by a judicial or quasi-judicial tribunal which are not otherwise reviewable by a court.” Gifford v. Commissioner of Pub. Health, 328 Mass. 608, 619 (1952); see also, School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-76 (2007) (“Certiorari is a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi-judicial tribunal”). Accordingly, remedies under the certiorari statute are restricted to the modification or annulment of an unlawful government action, or a remand order for reconsideration and/or further proceedings. See Mello Constr. v. Division of Capital Asset Mgmt., 84 Mass.App.Ct. 625, 630 (2013). This is particularly true where, as is the case here, a plaintiff is seeking relief for the denial of an application submitted to an administrative agency. Cf. id. at 629-31 (finding that contractor whose application for certification of eligibility to bid on public construction contracts was denied by agency could not sue agency for money damages but could only seek judicial review through an action in the nature of certiorari).
In support of its position, MIM points to Haverhill Bridge Proprietors v. County Comm'rs of Essex, a nineteenth century decision on a petition for a writ of certiorari. 103 Mass. 120 (1869). In the case, Essex county officials ruled, pursuant to a statute that required monetary payment for a taking by eminent domain, that the county was not required to render full payment for the taking of the plaintiffs’ bridge; the plaintiffs would have to secure a substantial portion of its compensation directly from the towns in the *95 county. The Court held that the county officials had incorrectly interpreted the statute and concluded that the plaintiffs were entitled to full payment from the county treasury. In so ruling, the Court awarded interest to the plaintiffs, noting that “if interest should not be allowed them they would not receive the full indemnity intended in the original award.” Id., 128. MIM argues that the award of interest in Haverhill Bridge Proprietors shows that the award of monetary relief is appropriate here. The decision, however, is inapposite. The recovery of interest was implied by the eminent domain statute at issue. This case, in contrast, concerns the denial of applications pursuant to a statute that does not contemplate monetary compensation of any sort. Moreover, the Court’s ruling, including the award of interest, was consistent with the traditional function of certiorari review; it modified an otherwise unlawful government action. In this case, the relief MIM seeks would go well beyond the modification of the challenged action, i.e., the decision to deny its applications. Significantly, MIM points to no other case, and certainly no recent case, involving the award of monetary relief under the certiorari statute.[4]
Accordingly, because MIM now seeks relief the Court cannot grant, MIM cannot succeed on its motion for judgment on the pleadings.
CONCLUSION
For the reason stated above, Middlesex Integrative Medicine, Inc.’s motion for judgment on the pleadings is DENIED and the Massachusetts Department of Public Health’s motion for judgment on the pleadings is ALLOWED.

 The Department apparently is no longer limiting the number of RMDs that will be approved, as long as the applicants demonstrate compliance with the Act and the Department’s regulations.

 In its reply brief, MIM suggests a complicated remand procedure if the Court denies its request for monetary relief. See PI. Reply Brief at 5. As MIM itself indicated in its initial brief, because it filed three new applications before the resolution of this lawsuit, remand of the matter now makes little sense and is waived by MIM.

 In arguing it is entitled to monetary relief, MIM references a line of cases allowing low bidders wrongfully deprived of a contract to recover bid preparation costs and lost profits. See, e.g., Paul Sardella Constr. Co. v. Braintree Hous. Authy., 3 Mass.App.Ct. 326 (1975). None of these cases is applicable as they all arose under statutes different from the Act and did not involve a discretionary certification decision, as was the case here. See Mello Constr. v. Division of Capital Asset Mgmt., 84 Mass.App.Ct. 625, 630 n.10 (2013) (rejecting similar argument made by contractor whose application for certification of eligibility to bid on public construction contracts was denied by agency).

 Alternatively, MIM suggest that the applications fees it paid in 2013 were an unconstitutional tax and that therefore the Court has the authority to order the Department to reduce or refund the fees charged. This argument is without merit. None of the cases MIM cites in support of its contention involved application fees or anything analogous, and each was brought under G.L.c. 231, not the certiorari statute. See, e.g., Emerson Coll. v. Boston, 391 Mass. 415, 423-26 (1984) (finding fee imposed on certain property owners an unconstitutional tax); Boston Gas Co. v. Newton, 425 Mass. 697 (1997) (city ordinance assessing a fee on public utilities unconstitutional tax). Even setting those considerations aside, the cases do not otherwise suggest that the fees imposed by the Department were unconstitutional.