439 Mass. 759 (2003)                                               759

Siemens Building Technologies, Inc. *v.* Division of Capital Asset Management.

SIEMENS BUILDING TECHNOLOGIES, INC. *vs.* DIVISION OF
CAPITAL ASSET MANAGEMENT & others.[1]

Suffolk. May 9, 2003. - July 16, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Contract,* Construction contract, Bidding for contract. *Public Works,* Bidding
procedure. *Practice, Civil,* Preliminary injunction.

In an action by a sub-subcontractor seeking preliminary and permanent injunc-
tions to prevent the defendants from using a different provider of an
automatic temperature control system to a public construction project, the
sub-subcontractor failed to meet its burden of demonstrating that it was
likely to succeed on the merits of its claims that the Commonwealth and
the general contractor were contractually obligated to use the sub-
subcontractor and that the defendants had violated the public bidding laws,
G. L. c. 149, §§ 44A-44H, where the Commonwealth determined that the
sub-subcontractor's system was not satisfactory, and where the sub-
subcontractor was not a bidder of the kind that the public bidding laws
were intended to regulate. [761-765]

CIVIL ACTION commenced in the Superior Court Department on
October 25, 2001.

A motion for a preliminary injunction was heard by *Allan
van Gestel,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stephen M. Sheehy* for the plaintiff.

*Stephen H. Clark,* Assistant Attorney General, for Division of
Capital Asset Management.

*Peter J. Gagne* for N.B. Kenney Company, Inc.

*Robert P. Garrity,* for Johnson Controls, Inc., was present but
did not argue.

*Paul W. Losordo,* for Suffolk Construction Co., Inc., was
present but did not argue.

[1]Johnson Controls, Inc. (Johnson Controls); N.B. Kenney Company, Inc.;
and Suffolk Construction Co., Inc.

CORDY, J. After being replaced as the proposed provider of an automatic temperature control system to a public construction project, Siemens Building Technologies, Inc. (Siemens), sought preliminary and permanent injunctions preventing the Commonwealth from using a different provider on the grounds that Siemens's contract and the public bidding laws had been violated. A judge in the Superior Court refused to issue the preliminary injunction, and Siemens appealed. We transferred the case to this court on our own motion, and we affirm the judge's ruling.

1. *Background.* The facts of this case are not disputed. In November, 2000, the Commonwealth's division of capital asset management (division) solicited bids, pursuant to G. L. c. 149, §§ 44A-44H, for general contracting and subcontracting work related to the construction of a new campus center at the University of Massachusetts at Boston (university). One subcontract required the provision of a heating, ventilating, and air conditioning (HVAC) system for the center. The defendant N.B. Kenney Company, Inc. (Kenney), submitted a bid for the subcontract. As required by G. L. c. 149, § 44F (2), Kenney listed on its bid form the names of the sub-subcontractors that it planned to use. One of these sub-subcontractors was Siemens, listed as the provider of the automatic temperature control system. Siemens was the only company to submit a bid proposal to Kenney for the system — not surprising, as Siemens's automatic temperature control systems were used throughout the rest of the university campus, and the division's project specifications required that the automatic temperature control system for the campus center interface with the existing Siemens systems.

On December 14, 2000, the division received the subcontract bids. Kenney was awarded the HVAC subcontract. On January 4, 2001, the division opened the general contract bids. Due to issues unrelated to this litigation, however, the naming of the general contractor was delayed several months. By the time the division executed the general contract with the defendant Suffolk Construction Co., Inc. (Suffolk), it had learned that the existing campus-wide Siemens automatic temperature systems were to be replaced with systems manufactured by Johnson

Controls, Inc. (Johnson Controls).[2] This meant that the automatic temperature control system in the new campus center would now need to interface and be compatible with a Johnson Controls system. Accordingly, the division revised its specification for the campus center system to ensure compatibility with the new campus-wide Johnson Controls system. It also conducted an investigation whether the system that Siemens had proposed to install could successfully interface with the Johnson Controls system.

To assist in this endeavor, the division hired a technical consulting firm specializing in the field. After assessing both Siemens and Johnson Controls systems, the consultant reported to the division on October 12, 2001, that "[t]he Siemens [system] is in our technical opinion, unable to meet specification . . . while the [Johnson Controls system] is . . . ." The division adopted the findings in the consultant's report and instructed the general contractor to change its automatic temperature control system provider from Siemens to Johnson Controls. That same day, the division informed Siemens of the decision by letter, noting that its decision was "in the best interests of the Commonwealth."

Siemens filed suit on October 25, 2001, against the division, Suffolk, Kenney, and Johnson Controls, alleging breach of contract and violation of the public bidding law, G. L. c. 149, §§ 44A-44H. When its request for a preliminary injunction was denied, Siemens petitioned for interlocutory relief pursuant to G. L. c. 231, § 118, first par., from a single justice of the Appeals Court, who denied the petition. Siemens then appealed to the full Appeals Court. We transferred the case to this court on our own motion.

2. *Discussion.* The standard that a moving party must meet to obtain a preliminary injunction is well established:

> "[T]he judge initially evaluates in combination the moving party's claim of injury and chance of success on the

---

[2]The decision of the university to change the campus-wide automatic temperature control systems to those manufactured by Johnson Controls was the result of recommendations made under an energy conservation contract that the university had entered into separate from the campus center construction contract at issue here.

merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." (Footnote omitted.)

*Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980). When a party seeks to enjoin governmental action, a judge is also "required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 89 (1984). In reviewing a judge's allowance or denial of a preliminary injunction, "[w]e decide whether the judge applied proper legal standards and whether there was reasonable support for his evaluation of the factual questions." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640, 642 (1987), citing *Packaging Indus. Group, Inc.* v. *Cheney, supra* at 615. Where there is no dispute regarding the facts of the case and no credibility determinations on which we would defer to the judge, we draw our own conclusions from the evidence in the record.

We look first to the moving party's prospects for success on the merits of its legal claim.[3] General Laws c. 149, §§ 44A-44H, sets out the procedure by which public construction contracts are to be awarded.[4] Both general contract bidders and subcontract bidders are subject to numerous procedural requirements, including the submission of a bid bond accompanying their bid, G. L. c. 149, § 44B (2), and the use of prescribed forms, G. L. c. 149, § 44E (2) (general bids); G. L. c. 149, § 44F (2) (subbids). In paragraph E of the subbid form, a sub-

---

[3]The complaint alleges both breach of contract and violation of the public bid statute. On appeal, however, Siemens makes no allegation of breach of contract separate from its statutory claim.

[4]With few exceptions, this procedure is applicable to all public contracts for the "construction, reconstruction, installation, demolition, maintenance or repair of any building" as long as the public agency estimates the contract to exceed $25,000. G. L. c. 149, § 44A (2).

bidder must list the names of the sub-subcontractors that it will employ based on bids that it has received from prospective sub-subcontractors.[5] G. L. c. 149, § 44F (3), fourth par. Paragraph F of the subbid form contains an agreement that "the above list of bids to the undersigned [subbidder] represents bona fide bids based on the hereinbefore described plans, specifications and addenda and that, if the undersigned is awarded the contract, they will be used for the work indicated at the amounts stated, if satisfactory to the awarding authority." G. L. c. 149, § 44F (2), par. F. The requirement that sub-subcontractors be listed in paragraph E and the representation by the subbidder that they will be used as long as they are "satisfactory to the awarding authority" are the only provisions of the public bidding law that address the status of sub-subcontractors.

In this case, the provisions of G. L. c. 149, §§ 44A-44H, were followed. Kenney, in its subbid for the campus center's HVAC work, listed Siemens as its automatic temperature control system sub-subcontractor, and Kenney was selected as the HVAC subcontractor in accordance with statutory procedures. Siemens's complaint regarding the subsequent events is twofold. First, Siemens contends that, once Kenney was selected as the HVAC subcontractor, the division and Suffolk were contractu-ally obligated to use Siemens as the automatic temperature control sub-subcontractor. Second, once the division removed Siemens as the provider of the campus center system, it was obligated by G. L. c. 149 publicly to solicit new bids for the campus center's automatic temperature control work.

Neither claim is likely to succeed. As noted above, the only requirements established by G. L. c. 149, §§ 44A-44H, regard-ing sub-subcontractors are that they be listed on the subbidder's bid form and that the successful subbidder agree to use them if they are "satisfactory to the awarding authority." G. L. c. 149, § 44F (2), par. F. Nothing in the statute prevents the awarding authority from determining that a prospective sub-subcontractor is not satisfactory and removing it from the contract.[6] There is no merit to Siemens's argument that the division never

---

[5]Because sub-subcontractors are listed in paragraph E of the subbid form, they are sometimes referred to as "paragraph E firms."

[6]Siemens quotes *J.F. White Contr. Co. v. Department of Pub. Works*, 24 Mass. App. Ct. 932, 933 (1987), for the proposition that "once a subbid is

determined that Siemens was "not 'satisfactory.' " The consulting report assessing the Siemens system to determine its compatibility with a campus-wide Johnson Controls system concluded that the Siemens system is "unable to meet specification sections." The division's acceptance of the report's findings as the basis for its decision to remove Siemens from the project was the equivalent of a specific finding that Siemens was not satisfactory.[7] The decision was neither "illegal [n]or arbitrary." *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham,* 330 Mass. 494, 496 (1953).

Siemens's claim that the division violated the provisions of G. L. c. 149, §§ 44A-44H, by not initiating a new public solicitation of bids for the automatic temperature control system sub-subcontract once it found the Siemens system not satisfactory, is equally unavailing. General Laws c. 149, §§ 44A-44H, set out the process by which general contracts and subcontracts are to be awarded. There is no provision for the bidding and awarding of sub-subcontracts independent of a subcontract.[8] Thus, there was no applicable provision of G. L. c. 149 for the division to violate.[9] In these circumstances, the motion judge correctly concluded that Siemens is not a bidder of the kind that

filed in accordance with the bid documents, it may not be changed." In that case, however, the contracting agency extended the completion date of a project after it had accepted the subbids and then refused to pay the resulting higher labor costs of the subcontractor. A subcontractor's protection against an agency's modification of the terms of the subcontract has nothing to do with an agency's power to replace an unsatisfactory sub-subcontractor.

[7]That the division's letter informing Siemens of its decision to replace it in "the best interests of the Commonwealth" did not state that its system was not satisfactory is not determinative. No magic words were required to find its product not satisfactory under G. L. c. 149, § 44F (2), par. F, and Siemens fully understood that its system was not approved.

[8]Siemens relies on G. L. c. 30, § 39M (*b*), to argue that the division was required to make a written statement of its reasons for awarding the automatic temperature control work to Johnson Controls rather than opening the work up for public bid. Section 39M (*b*) establishes that if an agency places specifications in a project that will limit full competition for that contract, the agency must provide "sound reasons in the public interest" upon written request. However, the section applies to specifications for contracts awarded and not to the bidding and awarding of sub-subcontracts.

[9]There is also no provision in G. L. c. 149 that would require the division in such a situation to rebid the entire heating, ventilating, and air conditioning subcontract.

G. L. c. 149, §§ 44A-44H, were intended to regulate, and that Siemens's position was akin to that of a material supplier. Once the division found Siemens's product not satisfactory in relation to the revised automatic temperature control specifications, it was free to direct the general contractor to substitute a product and a provider that would meet those specifications.

We need not address at length the likelihood of irreparable harm to Siemens if an injunction is denied. As the motion judge noted, the "public interest overlay" in this situation is significant. In the absence of some showing of illegal or arbitrary action, a determination by the division that the public interest is better served by having a single integrated campus-wide automation temperature control system provided by Johnson Controls should not be second guessed by a court. Siemens has not overcome the substantial public interest that would be adversely affected if an injunction were granted. The request for a preliminary injunction was properly denied.

3. *Conclusion.* The order of the Superior Court judge denying Siemens's request for a preliminary injunction is affirmed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*