Salinger, Kenneth W., J.
The Metropolitan Area Planning Council (“MAPC”) issued a request for proposals (“RFP”) to sell fire engines, which are also known as pumpers, in late 2015 on behalf of various Massachusetts cities and towns. Spartan Motors USA, Inc., submitted a timely response. MAPC rejected Spartan’s proposal on the ground that Spartan delivered its “technical proposal” and “price proposal” in the same box. Spartan insists that it submitted two boxes, one that only contained copies of its technical proposal and another containing only its price proposal. It also argues, in the alternative, that even if a price proposal binder had been incorrectly packaged with the technical proposal binders, that mistake was a “minor informality” within the meaning of G.L.c. 30B and MAPC was required by statute to waive or allow Spartan to correct the mistake. Spartan seeks a preliminary injunction that would reinstate its proposal, require MAPC to evaluate Spartan’s proposal, and in the meantime extend Spartan’s prior MAPC contract to sell fire engines, which expired on December 31, 2015.
The Court concludes that MAPC violated G.L.c. 30B, §6, when it rejected and refused to consider Spartan’s proposal. Assuming that Spartan improperly delivered its technical and price proposals in one box, as MAPC contends, that error did not prejudice other offerors, MAPC, or the cities and towns that may buy fire engines pursuant to contracts procured through this RFP. By law, therefore, MAPC was required to waive this harmless error and evaluate Spartan’s proposal on the merits. Spartan is entitled to preliminary injunctive relief reinstating and requiring MAPC to consider its proposal because Spartan is almost certain to prevail on the merits and it is in the public interest for MAPC to comply with the requirements of this procurement statute. Since Spartan is seeking to enforce a public policy enacted by the Legislature, it need not prove that it would suffer irreparable harm if preliminary injunctive relief were not granted. But the balance of harms would favor Spartan if they were relevant. MAPC’s further assertion that the Court cannot issue a preliminary injunction that would grant mandatory relief, alter the status quo, and in essence give Spartan final relief is without merit.
For all of these reasons the Court will allow Spartan’s motion for a preliminary injunction at least in part. It will order MAPC to reinstate and promptly evaluate Spartan’s proposal, without considering any error by Spartan in boxing up its proposal. However, the Court will not order MAPC to extend the term of Spartan’s prior fire engine contract in the meantime.
1. Factual Background
MAPC is a regional planning agency that was established by the Legislature in G.L.c. 40B, §24. It consists of representatives of various municipalities in the greater Boston area that comprise the Metropolitan Regional Planning District. See id., §26.
*219 MAPC conducts collective procurements under G.L.c.- 30B and G.L.c. 7, §22B, for its own members and for the Fire Chiefs Association of Massachusetts (“FCAM”). When MAPC conducts such procurements, it awards one or more contracts under which MAPC or FCAM members may then make purchases, if they wish, without having to conduct a procurement process of their own.
In October 2015, MAPC issued an RFP for contracts “to supply industry standard compliant pumper engines" to FCAM members (RFP at 7). The RFP stated that MAPC expected to award multiple contracts, and that “the number of awards will be determined on the basis of the competitiveness of the proposals received” (id. at 47). FCAM’s member municipalities will be able to purchase fire engines pursuant to any of those contracts, without having to conduct any further public procurement process. The RFP expressly required that “(p]rice and technical proposals must be submitted in separate, sealed packages” (id. at 17, 51). In accord with G.L.c. 30B, §6, MAPC established an Evaluation Committee to review and rate each technical proposal, without having any knowledge of the accompanying price proposal. The RFP specified that the price proposals would only be considered after the technical proposals had been rated. It correctly noted that MAPC was required by law to waive or allow a bidder to correct any “minor informality” in its submission. But the RFP also said that “(f]ailure to submit [price and technical] proposals in separate sealed envelopes will result in rejection of the proposal” (id. at 8).
Spartan submitted its response to the RFP on November 12, 2015, the day before the final deadline (which was noon on November 13). Spartan delivered two boxes to MAPC: an MAPC staffer gave Spartan a receipt confirming that MAPC “received two packages.” Spartan has submitted an affidavit from its representative stating under oath that one of the boxes contained four paper and one electronic copy of its technical proposal, that the other box contained one paper and one electronic copy of its price proposal, and that the box with the technical proposal did not contain any copies of its price proposal.
MAPC opened the various responses to this RFP during the afternoon of November 13, 2015. MAPC has submitted affidavits from the two people who opened all of the responses. They both state that they could only locate one box from Spartan, and that they have no idea what happened to the second box referenced in the receipt provided to Spartan by MAPC. They also state that the one box from Spartan that they opened contained four paper copies of Spartan’s technical proposal and one paper copy of its price proposal, all together in one box. At oral argument MAPC stated that neither of the staffers who opened Spartan’s box was on the Evaluation Committee responsible for evaluating the technical proposals on the basis of criteria other than price.
MAPC rejected Spartan’s proposal on the ground that it was “non-responsive” because its technical proposal and price proposal had been packaged together in one box. MAPC informed Spartan on November 19, 2015, that its proposal was rej ected and would not be considered for this reason.
On December 9, 2015, Spartan’s legal counsel delivered a letter to MAPC arguing in part that if Spartan had inadvertently commingled its technical and price proposals in one box then that was a “minor informality” that MAPC was obligated to waive under G.L.c. 30B. MAPC responded on December 14, 2015. MAPC insisted that its “decision cannot be rescinded,” even though MAPC’s response does not address—or suggest that MAPC ever considered—the statutory requirement that “minor informalities” be waived. Two days later Spartan wrote to the Massachusetts Inspector General, asking him to investigate this matter and “to advise MAPC to reinstate the Spartan bid.” Spartan filed this lawsuit after the Inspector General declined to act.
2. Discussion
Spartan is asking the Court to enforce the requirements of a public bidding statute, G.L.c. 30B, §6. As a result, to obtain preliminary injunctive relief Spartan must prove that (1) it is likely to succeed on the merits of its claims, and (2) the requested relief will promote or at least will not adversely affect the public interest. See LeClair v. Town of Norwell, 430 Mass. 328, 331-32 (1999). Unlike in lawsuits involving purely private interests, “a showing of irreparable harm is not required” because Spartan is in essence “acting as [a] private attorney! ] general to enforce a statute or a declared policy of the Legislature.” Fordyce v. Town of Hanover, 457 Mass. 248, 255 n.10 (2010) (suit to enforce public bidding statutes, G.L.c. 149, §§44A et seq.); accord LeClair, supra (suit to enforce the designer selection statute, G.L.c. 7, §38A 1/2 et seq.). MAPC’s argument that Spartan has not shown it will suffer irreparable harm without a preliminary injunction is therefore irrelevant. In any case, Spartan has demonstrated that it would suffer irreparable harm if its request for a preliminary injunction were denied.
2.1. Likelihood of Success on the Merits
Spartan is almost certain to prevail on the merits, even assuming that it erred by submitting its price proposal in the same box as its technical proposal. If all the factual assertions in MAPC’s sworn affidavits are true, and any inconsistent evidence by Spartan is incorrect, Spartan would still be entitled to final judgment in its favor as a matter of law. The packaging of Spartan’s technical proposal and price proposal binders in one box was the kind of “minor informality” or harmless error that MAPC was required to excuse. Indeed, if Spartan had moved for summary judgment *220 at the same time that it sought preliminary injunctive relief, the Court would have granted that motion and ordered that final judgment enter in Spartan’s favor.
By law, MAPC was required to waive “minor infor-malities” in any proposal. The Legislature defined “minor informalities” to mean “minor deviations, insignificant mistakes, and matters of form rather than substance of the bid, proposal, or contract document which can be waived or corrected without prejudice to other offerors, potential offerors, or the governmental body.” G.L.c. 30B, §2. The process of soliciting “competitive sealed proposals” is governed by §6 of the statute, while “competitive sealed bidding” is governed by §5. With respect to the RFP process followed in this case, the statute provides that “[a] proposal may be corrected, modified or withdrawn to the extent provided in paragraph (f) of section five.” See G.L.c. 30B, §6(f). Section five, in turn, provides in relevant part that “[t]he procurement officer shall waive minor in-formalities or allow the bidder to correct them.” See G.L.c. 30B, §5(f) (emphasis added). This requirement to waive minor informalities is mandatory, not discretionary, in contrast to other parts of §5 where the Legislature used the word “may” to indicate a discretionary power. See, e.g., Galenski v. Town of Erving, 471 Mass. 305, 309 (2015) (“The word ‘shall’ is ordinarily interpreted as having a mandatory or imperative obligation” when used in statutes) (quoting Hashimi v. Kalil, 388 Mass. 607, 609 (1983)); Commonwealth v. Gagnon, 439 Mass. 826, 832 (2003) (“When ‘shall’ and ‘may’ are used within the same section of a statute, there is a presumption that the Legislature realized the difference and was aware of their meanings”). This mandatory obligation to waive minor informalities is incorporated by reference into §6(f). MAPC concedes this point in its memorandum of law at page 13, n.7.
It is important under §6 that a respondent’s technical proposal is kept separate from its price proposal. The chief procurement officer must designate a person or committee who will first evaluate the proposal “on the basis of criteria other than price,” without considering or being aware of the pricing offered by that respondent. G.L.c. 30B, §6(e). As a result, the statute provides that each RFP “shall provide for the separate submission of price, and shall indicate when and how the offerors shall submit the price.” IcL, §6(b), last para.
However, there is no requirement that the price proposals be kept sealed until after the technical proposals have been evaluated. To the contrary, the statute provides that the chief procurement officer “may open the price proposals at a later time.” Id.., §6(d). “The use of the word ‘may’ denotes a discretionary power.” Provencal v. Commonwealth Health Ins. Connector Auth., 456 Mass. 506, 513 (2010); see also Gagnon, supra. It therefore indicates that the officer is free to open the technical and price proposals at the same time. If the price proposals are opened before the technical evaluations are completed, the procurement officer need only make sure that the price proposals are not disclosed “to the individuals evaluating the proposals on the basis of criteria other than price.” G.L.c. 30B, §6(d).
Spartan’s alleged failure to put its price proposal in a separate package was a “minor informality” because it was a “matter! ] of form rather than substance” and it could easily have been corrected without causing any prejudice to other offerors or potential offers, or to MAPC or the municipalities relying on this procurement. See id., §2. Spartan’s technical proposal was separate from and did not contain or disclose any part of its pricing proposal. All that MAPC had to do in order to correct the packing problem is to put the copies of Spartan’s technical proposal in the pile of technical proposals to be reviewed by the Evaluation Committee, while putting Spartan’s price proposal aside, storing it with the other respondents’ price proposals, and making sure that no member of the Evaluation Committee saw or learned the contents of Spartan’s price proposal.
Sometimes statutes require government officials to be persnickety rather than practical. Chapter 30B does not. To the contrary, it required MAPC to waive any “minor informality” that could be corrected without prejudicing the procurement process. MAPC’s failure to do so in this case was unlawful.
2.2. Public Interest (and Irreparable Harm)
It is in the public interest to require MAPC to reinstate and evaluate Spartan’s proposal, without considering whether Spartan failed to comply with the RFP requirement that it seal its technical and price proposals in separate boxes or envelopes. The Legislature made the policy judgment that it is in the public interest to waive or correct submission errors that are “matters of form rather than substance” and can be corrected without prejudicing the procurement process, as in this case. Furthermore, if it turns out that Spartan’s proposal deserves to be approved on the merits, it would further the public interest to allow FCAM members to be able to purchase fire pumper engines from Spartan.
Spartan would be entitled to preliminary injunctive relief even if it were required to prove that it would otherwise suffer irreparable harm, which it is not. Preliminary injunctive relief is appropriate in cases involving private interests where the plaintiff “may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). If no preliminary injunction were issued, and Spartan later prevailed, it would be hard pressed to vindicate its rights by proving money damages because it would be next to impossible to prove how many fire engine pumpers would have been purchased from Spartan rather than from one of the other winning respondents if Spartan had been given a contract at the same time as the other companies. In contrast, *221 MAPC has not shown that it is likely to suffer any irreparable harm if it is required to consider Spartan’s proposal on the merits. Furthermore, “[w]hat matters as to each party is not the raw amount of irreparable harm the parly might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Siemens Bldg. Techs., Inc. v. Division of Capital Asset Mgmt., 439 Mass. 759, 762 (2003), quoting Packaging Industries, supra, at 617. Since Spartan is almost certain to win this suit, and MAPC almost certain to lose, a preliminary injunction would be appropriate even if the risk of irreparable harm to Spartan from not granting such relief were only slightly greater than any risk of irreparable harm that granting the injunction could create for MAPC.
MAPC’s assertion that injunctive relief should be denied because Spartan did not race into court as soon as it learned its bid had been rejected without merit. Since the RFP contemplated that MAPC would award multiple contracts to all successful bidders, so that FCAM members seeking to purchase new fire pumper engines could choose among all of the approved venders, it makes no difference that the procurement process has been completed and some contracts have already been awarded. Even if Spartan were required to prove it would suffer irreparable harm without preliminary injunctive relief, which it is not for the reasons discussed above, the fact that Spartan did not file this action until early January 2016 would be immaterial. Although in many cases “(u]nexplained delay in seeking relief for allegedly wrongful conduct may indicate an absence of irreparable harm and may make an injunction based upon that conduct inappropriate,” that is not what happened here. Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 494-95 (1986). “The delay here was not without justification[.]” Id. at 495. Spartan quite reasonably tried first to convince MAPC to waive, or to allow Spartan to correct, the claimed error in its submission as required by c. 30B. It then tried to convince the Inspector General to weigh in. Spartan sought relief in court as soon as it learned that these efforts had been unsuccessful and that MAPC refused to abide by its statutory obligation to waive minor informalities. “Parties . . . deserve praise, not penalty, for attempting to negotiate their differences before knocking on the courthouse door.” Id. (affirming preliminary injunction barring former employee from continuing to work for competing insurance brokerage firm, even though suit was not filed until seventeen months after former employee started new job).
2.3. Availability of Mandatory Relief
MAPC insistence that the Court has no power to grant preliminary injunctive relief that would alter the status quo, and in essence grant Spartan final relief, is unavailing.
A preliminary injunction granting mandatory relief, in order to return the parties to something close to the situation that existed before the defendant acted unlawfully, is permissible under Massachusetts law even if it has the effect of temporarily granting the plaintiff all that it seeks as final relief. For example, a court may enter a preliminary injunction enforcing a contractual covenant not to compete, even where the order requires the defendant to stop engaging in commercial activity that has been going on for some time. See, e.g., Alexander & Alexander, 21 Mass.App.Ct. at 502. The same kind of mandatory, status quo altering preliminary injunction may also be appropriate where a government entity is causing harm by violating the law. See, e.g., Woods v. Executive Office of Communities and Development, 411 Mass. 599, 601-02 (1992) (affirming preliminary injunction ordering restoration of certain monthly housing voucher benefits). Although “[a] preliminary injunction ordinarily is issued to preserve the status quo pending the outcome of litigation,” Doe v. Superintendent of Schools of Weston, 461 Mass. 159, 164 (2011) (emphasis added), the availability of preliminary injunctive relief is not limited to such cases.
“(Wjhere preserving the status quo will perpetuate harm against the moving party,” a preliminary injunction “altering the status quo may be appropriate.” O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 1002 (10th Cir. 2004) aff'd and remanded sub nom Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006). As the United States Court of Appeals for the Fifth Circuit has explained:
The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve.the court’s ability to render a meaningful decision on the merits. It often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties,... by the issuance of a mandatory injunction, ... or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.
Canal Auth. of State of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974) (emphasis added; citations omitted). It appears that every United States Court of Appeals to address the issue agrees. See, e.g.; Braintree Laboratories, Inc. v. Citigroup Global Markets, Inc., 622 F.3d 36, 41 (1st Cir. 2010); Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995); Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 814 (3d Cir. 1989); Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 378 (4th Cir. 2012); United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Auth., 163 F.3d 341, 348 (6th Cir. 1998); Chicago Unitedlndustries, Ltd. v. City of Chicago, 445 F.3d 940, 943-44 (7th Cir. 2006); Golden Gate Restaurant Ass’n v. City and County of San Francisco, 512 F.3d 1112, 1116 (9th Cir. 2008).
*222 Although these cases were all decided under the federal rules of civil procedure, the same principle applies under Mass.R.Civ.P. 65. See generally Smaland Beach Ass’n, Inc. v. Genova, 461 Mass. 214, 228 (2012) (judicial construction of federal rules of civil procedure applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant differences in content” (quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Serus., Inc. v. Superior Court, 368 Mass. 174, 180 (1975)).
2.4. Scope of Relief
The Court will order MAPC to reinstate Spartan’s proposal and to evaluate it in the same manner that it evaluated proposals from the other respondents. At oral argument, MAPC insisted that such a review would be pointless, because MAPC would give Spartan’s proposal a lower rating based on Spartan’s failure to segregate its technical and price proposals in separate boxes. The Court will order MAPC not to do so, because that too would violate G.L.c. 30B. Since the statute requires MAPC to waive this mistake of form, MAPC may not consider the mistake in evaluating Spartan’s proposal.
However, the Court will not order MAPC extend Spartan’s prior contract for pumper apparatus that expired on its terms on December 31, 2015. There is no guarantee that MAPC will award a new pumper engine contract to Spartan after it evaluates Spartan’s technical and price proposals. The Court does not believe that it would be in the public interest to extend Spartan’s prior contract beyond its termination date, as doing so would be inconsistent with the RFP process mandated in G.L.c. 30B, §6. The better way to minimize the unfair prejudice caused to Spartan by MAPC’s unlawful rejection of Spartan’s proposal is to require MAPC to complete its evaluation of Spartan’s proposal in the next several weeks.
ORDER and PRELIMINARY INJUNCTION
The motion by plaintiff Spartan Motors USA, Inc., for a preliminary injunction is ALLOWED. The Court orders the Metropolitan Area Planning Council to reinstate the proposal submitted by Spartan in response to RFP #FCAM 2015 Pumpers, to evaluate the Spartan proposal in the manner specified in this RFP and on the same basis as the other proposals that were submitted, not to consider Spartan’s failure to seal its technical and price proposals in separate packages in evaluating Spartan’s proposal, to decide and inform Spartan no later than February 12, 2016, whether MAPC will award Spartan a contract pursuant to this RFP, and if so immediately to prepare and to execute that contract.
A Rule 16 conference will be held on Thursday, February 18, 2016, to discuss MAPC’s compliance with the preliminary injunction entered in this case and to establish a schedule conducting discovery and filing any dispositive motions.