Wilson, Paul D., J.
Plaintiff is a dentist, 41% of whose patients are participants in MassHealth, the state’s Medicaid program. Defendants (collectively “MassHealth”) are state officials charged with administering MassHealth, and in particular the provision of dental services to MassHealth participants.
Plaintiff is being prosecuted criminally for indecent assault on female patients. When MassHealth learned of this prosecution, it notified Plaintiff by letter dated October 6, 2016 that it was terminating his participation in the MassHealth dental program in order to protect the health, welfare, and safely of MassHealth members. MassHealth’s letter informed Plaintiff that in order to protect his right to a post-termination adjudicatory hearing, he needed to file a reply within 30 days, which he did. MassHealth reviewed that response, and issued a Final Determination Notice on December 9, 2016 that finalized his termination from the MassHealth program. The Final Determination Notice informed Plaintiff of his right to claim an adjudicatory hearing within the next 30 days.[3]
On November 17, 2016, Plaintiff filed this lawsuit. Along with his complaint, he filed an emergency motion for a temporary restraining order and preliminary injunction and a supporting brief. The clerk issued a short order of notice scheduling a hearing for Wednesday, November 23, 2016, over which I presided. At that hearing, the Assistant Attorney General representing MassHealth pointed out that plaintiff had failed to comply with Mass.RCiv.P. 4(d)(3) by serving the Attorney General as well as MassHealth, and therefore she had only known about the lawsuit, and the injunction request, for about 48 hours. The Assistant Attorney General requested an opportunity to prepare and file a brief, which I allowed, and then I allowed Plaintiffs request to file a supplemental brief. I established a briefing schedule that accounted for the fact that the next day was Thanksgiving. I then heard extensive oral argument, during which both parties presented me with various cases and regulations.
On December 7, 2016, Plaintiff filed his supplemental brief, as well as an amended complaint. The Mass-Health opposition brief was docketed on December 16, 2016. I have reviewed the extensive briefing; many of the statutes, regulations and cases (from Massachusetts and elsewhere) cited in those briefs; and the factual materials submitted by both parties. I will now deny Plaintiffs request for injunctive relief.
Discussion
The three requirements for a preliminary injunction are well known. The moving party must show “(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the [moving party’s] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [opposing party] in granting the injunction.” Loyal Order of Moose, Inc., Yarmouth Lodge #2270 v. Bd. of Health of Yarmouth, 439 Mass. 597, 601 (2003); quoting Tri-Nel Mgt., Inc. v. Bd. of Health of Barnstable, 433 Mass. 217, 219 (2001).
When a party seeks to enjoin governmental action, a fourth factor becomes relevant: the court “must also consider whether the grant of an injunction would adversely affect the public interest.” Student No. 9 v. Bd. of Educ., 440 Mass. 752, 762 (2004); accord, Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). If the governmental body has determined “that the public interest is better served” by the action that the moving parly seeks to enjoin, the agency’s determination “should not be second guessed by a court” unless the moving party shows that the government agency has engaged in “illegal or arbitrary action.” Stemens Bldg. Techs., Inc. v. Div. of Capital Asset Mgmt., 439 Mass. 759, 765 (2003).
1. Likelihood of Success on the Merits
Plaintiffs amended complaint, like his original complaint, includes two claims, for breach of contract *22 and for violation of his due process rights. The parties’ arguments largely focus on the due process claims, perhaps because a due process violation is more likely to be deemed an “illegal or arbitrary action,” as Siemens put it, than is a breach of contract. So I will first analyze Plaintiffs likelihood of success on the merits as to that claim.
a. The Due Process Claim
As Plaintiff correctly states in his opening brief, the due process clause applies to any “significant deprivation of liberty or property ... at the state’s hands.” Plaintiffs Brief of November 17, 2016 at 7, quoting Gonzales-Droz v. Gonzales-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (additional citation omitted). A due process analysis begins, therefore, with question of whether the state has deprived the complaining party of a liberty or property right.
A property right protected by the due process clause arises from “existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.” Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). At oral argument, Plaintiff conceded that there is no Massachusetts case law stating that a MassHealth provider has a property interest in his provider status. Nor does Plaintiff point to anything in the regulations that govern the MassHealth program that suggest that any provider has a property interest in continued participation in the MassHealth program. The property interest arises nonetheless, Plaintiff suggested at oral argument, from the simple fact that he has a contractual relationship with the MassHealth program.
For nearly 40 years, federal courts have been ruling that doctors, dentists and other providers of medical care do not have a property interest in continued participation in the Medicaid or Medicare programs. The earliest such case, in fact, arose in the First Circuit. Cervoni v. Sec’y of Health, Educ. & Welfare, 581 F.2d 1010, 1018, 1019-20 (1st Cir. 1978) (a physician did not “have a current valid expectation, based on the Government’s implied promise to continue an entitlement, in an important, personal, monetizable interest,” because to “engraft upon the [Medicare] system a concept of ‘accrued properly rights’ would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands”). Among the more recent federal appellate cases is Guzman v. Shewry, 552 F.3d 941, 953 (9th Cir. 2009) (providers have no protected property interest in “continued participation in Medicare, Medicaid, or the federally-funded state healthcare programs”). On pages 11 through 13 of its brief, MassHealth cites many more federal appeals court and district court cases that reach the same conclusion. On those pages of its brief, MassHealth also cites a few cases that, to the contrary, did find a property interest in continued participation in such programs, often based on peculiarities of the applicable state law. See, e.g., Snodgrass-King Pediatric Dental Assoc., P.C. v. Dentaquest USA Ins., 79 F.Sup.3d 753 (M.D.Tenn. 2015) (finding a property interest based in part on Tennessee statute’s limitations on government’s discretion to rescind provider status). Acknowledging the existence of these contrary federal cases, I am persuaded by the majority view that a provider of medical services does not acquire a property right to continue to participation in MassHealth merely because he signs a contract with the state when he becomes a provider, or when his provider status is renewed.
My conclusion is buttressed by the fact that Plaintiff relies heavily on cases finding a property interest, protected by the due process clause, in a professional’s right to continue to practice his profession even if the profession is regulated by the state. See, e.g., Barry v. Barchi, 443 U.S. 55 (1979); Lowe v. Scott, 959 F.2d 323 (1st Cir. 1992) (finding that a doctor has a property right in his medical license that creates a right to due process). Those cases do not apply here; MassHealth’s emergency action prevents Plaintiff from seeing Mass-Health patients, but does not affect his ability to continue to practice dentistry. That right is regulated by different state entity, the Board of Registration in Dentistry.
I have concluded that Plaintiff lacks a property right in continued participation as a provider in the Mass-Health program. Plaintiff does not clearly argue that a liberty interest is at stake. See Plaintiffs November 17, 2016 brief at 8 (“MassHealth stripped Dr. Patel of his constitutional property rights without due process of law”) (emphasis added). Therefore I rule that Plaintiff has failed to establish a likelihood that he will succeed on the merits as to his due process claim.
b. The Breach of Contract Claim
Plaintiffs breach of contract claim rests heavily on a federal district court decision from Connecticut, Fairfield County Medical Association v. United Healthcare of New England, 985 F.Sup.2d 262 (2013). In that case, the defendant (“United”) was a private health insurance company that was the largest private Medicare insurer in Connecticut. United dropped 2,200 physicians from its Medicare Advantage program by sending them letters that terminated their participation in that health insurance plan without cause. The differences from this case are obvious, because Fairfield County involved a private insurer’s mass termination of physicians, without cause, as providers in one Medicare plan, apparently to serve the private insurer’s economic interests.
Nonetheless, Fairfield County resembles this case in that the court focused on the language of the relevant provider contracts in determining that the plaintiffs there had established that they were likely to succeed on the merits of their breach of contract claim.[4] The contract described in the Fairfield County *23 had different provisions, of course, from the contract at issue here, so the case is helpful to Plaintiff only because it stands for the general principle that a provider of Medicare (or Medicaid) services can obtain an injunction against termination from the program if the terminating entity has breached the contract between them.
The provider contract between MassHealth and Plaintiff stated that it “shall continue in effect until terminated by either party upon written notice to the other party; and [ ] MassHealth may not terminate this Contract without affording to the Provider any applicable right to contest such termination available under federal and state law and regulation that has been properly requested by the provider.”[5] In turn, MassHealth regulations state that it is a provision of every provider contract, whether or not it is included verbatim, that the provider agrees to comply with all laws, rules and regulations governing MassHealth, 130 CMR 450.223(C)(1), and that “[a]ll providers” are also “subject to the rules, regulations, standards and laws governing MassHealth.” 130 CMR 450.238(A).
The MassHealth regulations contain a list of 10 “[instances of violation by a provider.” 130 CMR 450.238(B). Plaintiff points out that these 10 instances do not include being prosecuted for sexual assault on MassHealth patients. Plaintiff fails to note, however, that this list of violations is not exhaustive; the regulation states that violations “include, but are not limited to” the 10 enumerated violations.
It is true that MassHealth fails to point to any regulation that calls it a “violation by a provider” to be accused (but not convicted) of multiple instances of sexual assault upon patients. Nonetheless, given MassHealth’s responsibility to protect its participants from sexual assault by its providers, I conclude that MassHealth has pointed to a violation of a “standard! ]” governing the MassHealth program where, as MassHealth put it in its Final Determination Notice, Plaintiffs “continued participation in the MassHealth Dental Program could reasonably be expected to endanger the health, welfare, and safety of MassHealth members and the integrity of the MassHealth program.”
In the process leading up to the Final Determination Notice, and in its offer of an adjudicatory hearing at which plaintiffs can contest that final determination, it is undisputed that MassHealth followed the procedures set out in the program regulations concerning suspension or termination of participation of a provider, found at 130 CMR 450.238 through 450.242. Thus, it appears that MassHealth has complied with its contract obligation to honor “any applicable right to contest such termination available under federal and state law and regulation that has been properly requested by the provider.”[6] I rule, therefore, that Plaintiff has failed to demonstrate a likelihood of success on the merits as to his breach of contract claim.
2. The Public Interest
Having found a failure of likelihood of success on the merits on both claims in the amended complaint, I need go no further. However, I will briefly address the fourth prerequisite for an injunction against governmental action of this nature: the implications of the injunction for the public interest.
MassHealth has now twice determined that the allegations against Plaintiff are serious, and concern an alleged pattern of misconduct with regard to patient care, including potentially the care of MassHealth members. MassHealth made its second such determination after reviewing a five-page opposition submitted by Plaintiffs counsel. MassHealth stated in its Final Determination Notice that it “does recognize that a criminal charge is not the same as a criminal conviction,” and that Plaintiff has pleaded not guilty to the criminal charges. Nonetheless, MassHealth stated in that Notice, “Ultimately, MassHealth believes its primary duty is to our members, and is therefore taking this action the interest of protecting those members from potential harm.”
Siemens teaches that a court should not lightly second-guess such a public safety determination by an agency that is in the best position to decide where the public interest lies. I conclude that .the public interest strongly suggests that an injunction should not issue.
Conclusion
Plaintiffs Motion for Temporary Restraining Order & Preliminary Injunction is DENIED.

 Below I quote additional relevant portions of that Final Determination Notice, which is Exhibit B to Defendants’ opposition brief.

 At one point in his first brief, Plaintiff suggests that Fairfield County found that plaintiffs also demonstrated a likelihood of success on the merits-of their claim of violation of procedural due process. Plaintiffs Brief of November 17, 2016 at 8. That reading of Fairfield County is questionable at best. The court’s discussion concerning likelihood of success on the merits concluded by holding that the defendant insurance company’s actions were “in apparent breach of both Medicare regulations and the Physician Contract provisions regarding termination,” 985 F.Sup.2d at 273, without mentioning the due process clause. Elsewhere in his first brief, Plaintiff states more narrowly, and more accurately, that “the Fairfield. County court determined that the provider had demonstrated a likelihood of success on the merits of its breach of contract claim.” Plaintiffs Brief of November 17, 2016 at 9.

 Both parties’ Gitations to the record often fail to include pinpoint citations, making it difficult to locate contract language, or regulatory language, cited in the briefs. This particular contract language is quoted in full or in part in both *24 parties’ briefs, and so I conclude there is no dispute that it is contained in the provider contract.

 Plaintiff argues that the procedural rights afforded in the MassHealth regulations are constitutionally insufficient, because they do not afford him a pre-termination or prompt post-termination adjudicatory hearing. That is a due process argument, not a breach of contract argument, and I have already determined that Plaintiff has not demonstrated a likelihood of success on the merits as to his due process claim argument.